27054. BRAY *v.* GEORGIA NATURAL GAS CORPORATION.

DECIDED OCTOBER 17, 1938.

*Joe M. Lang,* for plaintiff.
*J. H. Paschall, R. F. Chance,* for defendant.

SUTTON, J. T. A. Bray sued the Georgia Natural Gas Cor-

poration, and alleged that in 1929 he conveyed to the defendant an easement authorizing the installation of a pipe line across his land for the transmission of gas; that one portion of the easement contract provided that "The purchaser shall pay all damage to fences, crops, land, which may be suffered by reason of installation, maintenance, operation, or alteration of said pipe line and appurtenances thereto;" that in June, 1936, the defendant entered upon the land of the plaintiff and removed a four-inch pipe line from where it had been located in the ground, and in doing so left a ditch, approximately two feet wide and about two feet deep, running up and down a hill across the plaintiff's field and through the woods; that rains had come and washed dirt from said ditch into a stock pond, which pond had been the only source of water for all domestic uses on the farm except for drinking purposes; that there was no running water on the farm, and this stock pond was used for watering all the stock kept on plaintiff's farm, numbering eight or ten head, and also for washing clothes and for laundry purposes; that this stock pond added greatly to the value and convenience of his farm, and before the alleged acts of the defendant in removing said gas-pipe line the water in this pond was clear and free of all dirt and mud; that dirt had run into said stock pond from the ditch and gully made by the defendant until it had filled the pond up two feet deep in mud, which caused a film to form over the top of the water in the pond and caused the water to be muddy and wholly unfit for washing clothes, and rendered the said stock pond almost useless for watering his cattle and stock; and that as a result of the alleged acts of the defendant in removing the gas-pipe line and in failing to fill up the ditches his land had been damaged in the sum of $200. The defendant answered and set up among other things, that the plaintiff came to its office at Calhoun, Georgia, and claimed that the ditch had not been entirely filled up, requested that the matter be investigated, and asked that he be given the job, which its agent agreed to do; that it was agreed at said time that $25 would cover everything, and plaintiff made no other demand at that time. Defendant denied that it had injured or damaged plaintiff in any way or manner, and denied that it was indebted to him in any sum or manner, but tendered into court the sum of $25 in settlement.

The evidence for the plaintiff tended to sustain the allegations

of his petition. The plaintiff testified: "After the pipe was removed they threw the dirt back into the ditch, and the dirt wasn't hardly level with the top, and that was before it settled. Then that dirt settled. Then when it would rain, water would get in the ditch and wash the dirt out, and the longer it rained the deeper the ditch got. . . It washed some in the woods, too. . . I had this pond for stock and cattle, and it was all we had to depend on for water, . . and was as clear as spring water, and mud would not wash into it the way I had it arranged. . . The water was suitable for washing as well as for cattle and stock. When this dirt washed out it went into this pond. The pond is in bad condition now; it has got a mud top about two feet deep, and that causes the water to be muddy, and sometimes it has a skim over it, and that is not very healthy for stock and cattle. . . The whole damage would be more than $200. . . I offered to fix this ditch for $25. . . That was for the hundred yards of ditch across my field. There had been some mud already washed into the pond. I did not say anything about fixing the two hundred yards through the woods for that $25. The paper you hand me was the release that they required me to sign, releasing the company of all damages. I had not made any arrangement like that. I told them that I didn't make any arrangement like that, and wouldn't sign that for $25. . . He required me to sign that paper. In filling up that ditch, we would have to haul dirt and put it in there. If we dragged dirt from either side, that would just make the ditch bigger, and that would have had a tendency to cause more dirt to wash into the stock pond."

At the conclusion of his evidence the court directed a verdict of $25 for the plaintiff. He moved for a new trial, and excepted to the judgment overruling that motion.

By the terms of the contract the defendant obligated itself to pay the plaintiff for any damages to his land that it might cause by the installation, maintenance, operation, or alteration of the said pipe-line. Under the evidence, the pipe-line was taken out of the ground and removed, without filling up the ditch, which resulted in the damages as claimed by the plaintiff. Under a proper construction of this provision of the contract, we think it included and covered any damage that may have been caused to the land of the plaintiff by the removal of the pipe-line. While the plaintiff

admitted that he agreed to fix the ditch across his field for $25, he testified that this did not include the ditch through the woods about two hundred yards in length, and that mud had already washed into his stock pond at that time, rendering it almost useless; and he testified that his damage was as much as $200. Under the evidence, we think the question of the amount of the claimed damages to the plaintiff's land should have been submitted to the jury, and that the court erred in directing the verdict for $25, and in overruling the motion for new trial.

*Judgment reversed. Stephens, P. J., and Felton, J., concur.*